UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLUMBIA

IN RE:                                               *

STUART MILLS DAVENPORT            *     Case No. 15-00540
                                                           Chapter 13
       Debtor                                *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**DEBTOR'S OBJECTION TO PROOF OF CLAIM
FILED BY BABAK DJOURABCHI AND MONICA WELT**

    STUART MILLS DAVENPORT (the "Debtor"), by Jeffrey M. Orenstein and Goren, Wolff & Orenstein, LLC, files this Objection to the Proof of Claim (Claim No. 2) filed by or on behalf of Babak Djourabchi and Monica Welt (the "Creditors") in the amount of $121,813.88, and as grounds therefore states as follows:

**THE BANKRUPTCY CASE AND THE PROOF OF CLAIM**

    1.    On October 14, 2015 (the "Petition Date"), the Debtor filed with the United States Bankruptcy Court for the District of Columbia (the "Court") a Voluntary Petition for Relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101-1330 (as amended, the "Bankruptcy Code") commencing the above-captioned Chapter 13 case.

    2.    This Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§157 and 1334.

    3.    Venue is proper in this Court pursuant to 28 U.S.C. §§1408 and 1409.

    4.    This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

    5.    On November 9, 2015, Creditors filed a Proof of Claim (the "2015 POC") asserting a claim for $121,813.88, secured by the improved real property located at 1700 1st Street, N.W., Washington, D.C. 20001 (the "Property"). A copy of the 2015 POC is attached hereto as **Exhibit 1**.

**FACTUAL BACKGROUND**

I.  The First Case

6. On September 2, 2009 (the "First Petition Date"), the Debtor filed his Voluntary Petition for Relief under Chapter 13 of the Bankruptcy Code thus initiating the bankruptcy case captioned In re Stuart Mills Davenport, Case No. 09-00772 (the "First Case").

7. On September 24, 2009, the Debtor filed his Schedules A through J in the First Case (the "First Schedules").

8. In Schedule D of the First Schedules, a copy of which is attached hereto as **Exhibit 2**, the Debtor identified a secured obligation due to the Creditors in the amount of $80,000.00.

9. In Schedule F of the First Schedules, a copy of which is attached hereto as **Exhibit 3**, the Debtor identified an unsecured obligation due to the Creditors in the amount of $13,410.88.

10. On October 19, 2009, Creditors filed their Proof of Claim (the "2009 POC") in the First Case. A copy of the 209 POC is attached hereto as **Exhibit 4**.

11. Paragraph number 1 on Page 2 of the 2009 POC explicitly states "State the total amount owed to the creditor on the date of the Bankruptcy filing."

12. Box 1 on Page 1 of the 2009 POC states that the amount of Creditors' claim as of the date the First Case was filed was $94,146.75.

13. Paragraph number 4 on Page 2 of the 2009 POC explicitly states "State the type and the value of the property that secures the claim, attach copies of lien documentation, and state annual interest rate *and the amount past due on the claim as of the date of the bankruptcy filing*." (Emphasis added).

14. Box 4 on Page 1 of the 2009 POC states that the amount of the secured claim on the First Petition Date was $80,000.00 and that the amount of the unsecured claim on the First Petition Date was $14,146.75.

15. The secured obligation asserted in the 2009 POC was evidenced by a Promissory Note for Business and Commercial Purposes in the principal amount of $80,000.00 (See 12-1, Pages 1

through 4 of the 2009 POC), and a Money Loaned Deed of Trust (See 12-1, Pages 5 through 20 of the 2009 POC).

16. The unsecured obligation asserted in the 2009 POC was evidenced by a Promissory Note in the principal amount of $10,000.00 (See 12-1, Pages 22 through 29 of the 2009 POC).

17. Box 4 on Page 1 of the 2009 POC also reflected that there were no other charges as of the time the case was filed that were included in the secured claim.

18. Page 2 of the 2009 POC explicitly states that "Criminal penalties apply for making a false statement on a proof of claim."

19. The POC was signed by Joel S. Aronson ("Aronson"), counsel for the Creditors in the First Case and in the case presently before the Court.

20. On March 31, 2010, more than five months after the filing of the 2009 POC, the Debtor filed his Third Amended Plan in the First Case (the "Plan"), a copy of which is attached hereto as **Exhibit 5**.

21. At the time that he filed the Plan, the Debtor believed and continues to believe that there were no pre-petition arearages on the obligation owed to Creditors as of the First Petition Date.

22. At the time that the Debtor filed the Plan, Creditors had not amended their 2009 POC and their 2009 POC reflected that their was no arrearage on the secured claim.

23. Section B of the Plan provided:

> THE DEBTOR SHALL MAINTAIN POST-PETITION PAYMENTS DIRECTLY WHILE CASE IS PENDING AND THE TRUSTEE WILL CURE ALL PRE-PETITION ARREARS, COSTS, AND FEES OF THE FOLLOWING CLAIMS:

24. Because the Debtor did not believe he had any Pre-Petition arrearages on his obligation to Creditors, and because Creditors filed their 2009 POC asserting that there were no Pre-Petition arrearages owed to them, Creditors were not listed in Section B of the Plan.

25. Section C of the Plan provided:

> THE DEBTOR SHALL PAY DIRECTLY THE FOLLOWING CLAIMS, TO THE EXTENT THEY ARE 11 U.S.C. § 1322(B)(5) CLAIMS (THE FINAL PAYMENT UNDER THE PLAN BEING TREATED AS DUE IN 60 MONTHS) OR ARE ALLOWED SECURED CLAIMS SUBJECT TO THE

PROVISIONS OF HANGING PARAGRAPH OF 11 U.S.C. § 1325(a)(5), IF APPLICABLE) AND CLAIMS ARISING FROM THE FOLLOWING LEASES WHICH THE DEBTOR HEREBY ASSUMES:

26. Because the 2009 POC stated, upon the potential for criminal penalties if false statements were made in the 2009 POC, because Creditors 2009 POC reflected that there were no arrearages as of the First Petition Date, and because thee representations of Creditors that were made in the 2009 POC were consistent with his own belief, there was no need for the Debtor to provide for the cure of any arrearages in his Plan. For that reason, the Debtor listed Creditors in Section C of his Plan and was permitted to make payments to the Creditors outside of the Plan.

27. Creditors did not object to their treatment in the Plan.

28. By Order entered March 31, 2010, the Plan was confirmed.

29. In the course of the First Case, the Debtor made his payments that were due under the Plan including payments that he was obligated to make to the Creditors outside of the Plan and, as a result, Creditors never filed a Motion seeking relief from the automatic stay in order to foreclose on their lien.

30. On September 3, 2013, nearly four years after filing their 2009 POC, and more than three years after confirmation of the Plan, the Creditors filed an Amended Proof of Claim (the "Amended 2009 POC") in the First Case. A copy of the first two pages of the Amended 2009 POC is attached hereto as **Exhibit 6**.

31. Paragraph number 1 on Page 2 of the Amended 2009 POC explicitly states "State the total amount owed to the creditor on the date of the Bankruptcy filing."

32. Box 1 on Page 1 of the Amended 2009 POC states that the amount of Creditors' claim as of the First Petition Date was $94,146.75.

33. Paragraph number 4 on Page 2 of the Amended 2009 POC explicitly states "State the type and the value of the property that secures the claim, attach copies of lien documentation, and state annual interest rate *and the amount past due on the claim as of the date of the bankruptcy filing*." (Emphasis added).

34. Box 4 on Page 1 of the Amended 2009 POC states that the amount of the secured claim on the Petition Date was $80,000.00 and that the amount of the unsecured claim on the Petition Date was $14,146.75.

35. Box 4 on Page 1 of the Amended 2009 POC also reflected that there were no other charges that were included in the secured claim as of the First Petition Date.

36. Page 2 of the Amended 2009 POC explicitly states that "Criminal penalties apply for making a false statement on a proof of claim."

37. The Amended 2009 POC was signed by Aronson, counsel for the Creditors.

38. The Amended 2009 POC was never thereafter further amended.

39. The Debtor completed his Plan payments in the First Case on January 20, 2015.

40. Thereafter, the Chapter 13 Trustee provided her Chapter 13 Standing Trustee's Final Report and Account (the "Report") in the First Case, a copy of which is attached hereto as **Exhibit 7.**

41. As reflected in the Report, over the life of the Debtor's Plan, the Debtor made payments to the Chapter 13 Trustee totaling $250,000.00 in the First Case.

42. From the amounts received by the Chapter 13 Trustee in the First Case, the Chapter 13 Trustee paid mortgage arrearages of $72,778.16 and interest on those mortgage arrearages of $3,046.90.

43. From the amounts received by the Chapter 13 Trustee in the First Case, the Chapter 13 Trustee paid $128,093.77 to holders of general unsecured claims including, but not limited to, Creditors.

44. On March 12, 2015, the Debtor filed his Debtor's Corrected Application for an Order to Show Cause (the "Application") in the First Case alleging that Creditors were violating the automatic stay and the Confirmation Order by requiring the Debtor to make additional payments beyond what he was required to pay.

45. On March 24, 2015, after the Debtor had completed his Plan payments, Creditors filed an Opposition to the Application (the "Opposition") in the First Case.

46. In the Opposition, for the first time, Creditors alleged that the Debtor had been in arrears on his obligations to Creditors as of the First Petition Date and further alleged that the Debtor had been in arrears on the secured claim since September of 2006, a fact that the Debtor disputed and continues to dispute today.

47. The statement regarding the existence of Pre-Petition arrearage that Creditors made in the Opposition was in direct contradiction to the statements they made under penalties of perjury to the Court, to the Chapter 13 Trustee, and to the Debtor in both their 2009 POC and their Amended 2009 POC.

48. Following a hearing on the Application, the Court denied the relief sought by the Debtor in the Application, but made no ruling regarding the amounts then due to Creditors by the Debtor.

49. Thereafter, by e-mail to the Debtor sent on June 18, 2015, Aronson, on behalf of the Creditors, advised the Debtor that the amount due on the Creditors' secured claim as of June 30, 2015 would be $114,568.07, an amount that was wholly inconsistent with the 2009 POC and the Amended 2009 POC filed by Aronson on Creditors' behalf in the First Case. A copy of the E-Mail is attached hereto as **Exhibit 8**.

50. Had Creditors asserted that there been any arrearages as of the First Petition date in either the 2009 POC or the Amended 2009 POC, the Debtor would have included those arrearages in Section B of his Plan.

51. Had there, in fact, been any arrearages on the First Petition Date, there were more than sufficient funds paid into the Debtor's Chapter 13 Plan to have satisfied the arrearages and still have distributions made by the Chapter 13 Trustee to the unsecured creditors.

52. At that time, the Debtor disputed the allegations made by Creditors in their Opposition.

53. Indeed, the Opposition included an allegations of amounts due that were not previously asserted as part of the 2009 POC or the Amended 2009 POC as required by Bankruptcy Rule 3001(c).

Case 15-00540-ELG    Doc 37    Filed 12/30/15    Entered 12/30/15 14:23:15    Desc Main
                         Document      Page 7 of 10

54. In an attempt to resolve the issue in the First Case, on July 15, 2015, the Debtor filed his Revised Motion to Determine Final Cure and Payment (the "Final Cure Motion") in which, among other things, the Debtor pointed out that:

    A. Creditors were barred by the provisions of Bankruptcy Rule 3001(c)(2)(D)(i) from asserting a Pre-Petition arrerage at that time (Paragraph 50); and

    B. Creditors were barred, by the doctrine of judicial estoppel, from asserting a Pre-Petition arrerage at that time (Paragraph 51).

55. Based upon those arguments, the Debtor asked the Court to enter an Order:

    A. Directing Creditors to promptly clarify the inconsistencies in their 2009 POC, Amended 2009 POC, and Opposition;

    B. Waiving any alleged Pre-Petition arrearages that were not included in their Amended 2009 POC;

    C. Waiving any additional interest or charges resulting from those alleged arrearages;

    D. Assessing costs and fees against Creditors pursuant to Rule 3001(c)(2)(D)(ii);

    E. Scheduling a hearing on the Final Cure Motion; and

    F. Granting such other and further relief as the nature of this cause may require.

56. Thereafter, Creditors filed their opposition to the Final Cure Motion and on September 8, 2015, the Debtor filed his reply to Creditors' opposition.

57. As of this date, the Court has not set a hearing on the Final Cure Motion and has not ruled on the Final Cure Motion.

II.    Events After the Filing of the Final Cure Motion

58.    By e-mail sent September 17, 2015, Aronson forwarded a courtesy copy of a Notice of Foreclosure Sale of Real Property or Condominium Unit (the "Foreclosure Notice"), a copy of which is attached hereto as **Exhibit 9**.

59.    The Foreclosure Notice advised the Debtor that the Property was going to be sold at auction on October 20, 2015.

60.    The foreclosure was scheduled for the benefit of Creditors notwithstanding that the Debtor was not then in default on his obligations to creditors.

61.    Knowing that he was not in default on his obligations to creditors and that Creditors were pursuing an unlawful foreclosure, the Debtor waited and hoped that this Court would rule on the Final Cure Motion in sufficient time to avoid the announced foreclosure sale without having to take any further judicial action.

62.    When the Court still did not rule on the Final Cure Motion, and knowing that he was not default on his obligation to Creditors, the Debtor had no alternative but to file a new bankruptcy case to stay the foreclosure sale and address his other pressing financial obligation, a tax debt to the Internal Revenue Service stemming from the unpaid employment taxes of Big Bear Café, LLC ("Big Bear"), an entity in which the Debtor maintained a 100% ownership interest.

III.    The Present Bankruptcy Case

63.    On October 14, 2015, the Debtor filed his Schedules (the "2015 Schedules").

64.    Schedule D of the 2015 Schedules reflected the secured debt owned to Creditors.

65.    With regard to Creditors' claim, the Debtor knew that there were no arearages in his obligation to Creditors, but also knew that, after the completion of his plan payments in the First Case, Creditors had asserted that there were arearages notwithstanding that Creditors had never filed a Proof of Claim asserting that there were arearages in the First Case. For that reason, the Plan prophylactically provided for a cure of any arrearages if arrearages were ultimately determined to exist.

67. While Creditors, through the filing of their 2009 POC and the Amended 2009 POC, stated under penalties of perjury that there were no arearages during the administration of the First Case, the 2015 POC alleged that the amount of arearages and other charges as of the time the current case was filed was $121,813.88.

68. In other words, Creditors asserted that there was no principal balance due, but the entire remaining claim was made up of arearages and other charges, none of which existed as of the First Petition Date.

69. The Debtor disputes there is any arrearage component in the claim due to Creditors and disputes that he owes such other charges.

70. Even if an arrearage had existed prior to the First Petition Date, as a result of their filings in the First Case, Creditors are estopped from asserting that such an arrearage existed.

71. As of the filing of this case, the amount due to Creditors was $54,435.00.

72. Creditors' 2015 POC is overstated by $67,378.88.

WHEREFORE, the Debtor respectfully objects to the 2015 POC filed by Creditors and requests that this Court enter an Order:

A. Sustaining this Objection;

B. Allowing Creditors' claim in the reduced amount of $54,435.00;

C. Awarding the Debtor costs and legal fees, pursuant to Bankruptcy Rule 3001(c)(2)(D)(ii), that the Debtor incurred as a result of the current assertion of a claim that is inconsistent with the amounts set forth in the 2009 POC and the Amended 2009 POC ; and

D. Granting such other and further relief as the nature of this cause may require.

## NOTICE TO CREDITORS

**NOTICE IS HEREBY GIVEN TO THE ABOVE-NAMED CREDITORS THAT SUCH CREDITORS MUST FILE WITH THE CLERK OF THE BANKRUPTCY COURT, 333 CONSTITUTION AVE., NW, WASHINGTON, DC 20001, A RESPONSIVE MEMORANDUM OPPOSING THE OBJECTION AND REQUEST FOR A HEARING, IF DESIRED, UNLESS THE CREDITORS WISH TO RELY SOLELY UPON THE PROOF OF CLAIM, AND MAILS A COPY THEREOF TO THE UNDERSIGNED, WITHIN THIRTY (30) DAYS OF THE DATE OF SERVICE OF THIS OBJECTION.  A HEARING MAY BE HELD UPON THE OBJECTION, AND ANY RESPONSE THERETO, BY THE COURT AT THE COURT'S DISCRETION.**

Respectfully submitted,

\s\ Jeffrey M. Orenstein
JEFFREY M. ORENSTEIN (#428335)
Goren, Wolff & Orenstein, LLC
Shady Grove Plaza
15245 Shady Grove Road
Suite 465
Rockville, Maryland 20850
(301) 984-6266
jorenstein@gwolaw.com

Attorneys for the Debtor

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this __30th__ day of December, 2015, a copy of the foregoing was sent via first class mail, postage pre-paid and, if so indicated on the ECF receipt, via electronic mail to: Joel Aronson, Esq., 6411 Ivy Lane, Suite 405, Greenbelt, Maryland 20770; Babak Djourabchi, 3459 Holmead Pl., N.W., Washington, D.C. 20010; Monica Welt, 3459 Holmead Pl., N.W., Washington D.C. 20010; Cynthia A. Niklaas, Chapter 13 Trustee, 4545 42nd Street, N.W., Suite 211, Washington, D.C. 20016; and Office of the United States Trustee, 115 South Union Street, Suite 210, Plaza Level, Alexandria, Virginia 22314.

\s\ Jeffrey M. Orenstein
Jeffrey M. Orenstein