The document below is hereby signed.

Signed: July 21, 2016



S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| STUART MILLS DAVENPORT, | ) | Case No. 15-00540 |
| | ) | (Chapter 11) |
| Debtor. | ) | Not for publication in |
| | ) | West's Bankruptcy Reporter |

**MEMORANDUM DECISION RE DEBTOR'S OBJECTION TO THE
PROOF OF CLAIM FILED BY BABAK DJOURABCHI AND MONICA WELT**

The debtor, Stuart Mills Davenport, has filed an objection (Dkt. No. 37) to the proof of claim of Babak Djourabchi and Monica Welt (Claim No. 2 on the claims register). Pursuant to a trial of the matter, the court makes the following findings of fact and conclusions of law.

I

THE PROMISSORY NOTE AT ISSUE

On September 21, 2006, Davenport borrowed $80,000 from Djourabchi and Welt and executed a *Promissory Note for Business and Commercial Purposes* in favor of Djourabchi and Welt in the principal sum of $80,000.00, with interest on the outstanding principal balance and any unpaid interest from September 21, 2006, at the rate of 10.5% per annum, compounded annually. The

*Promissory Note* set a maturity date of September 22, 2016.  The note provided in part:

    2. <u>Payments of Interest and Fees</u>.  All payments are due by 5:00 PM on the first calendar day of each month. Debtor understands and acknowledges that he has requested to make interest-only payments to Creditor, and Creditor has made this Promissory Note in full reliance of the same - therefore, monthly payments shall remain interest-only for life.  Interest is calculated on a monthly basis accruing on the first calendar day of each month, at 9:00 AM, and will not be prorated for a daily calculation for any reason. Any consideration for prepayment shall include interest for the entire calendar month in which the prepayment is scheduled to be made.

    <u>Method of Payments</u>.  Any and all payments by Debtor, including, but not limited to prepayments of principal, interest,, or any other amounts of any kind with respect to this Promissory Note shall be made in immediately available funds by Debtor to Creditor and shall be deposited directly at Citibank Acct# [redacted] or in such other means and at such other addresses as Creditor shall direct from time to time, on or before the due date and without any prior demand, i.e., without any type of billing, invoicing or notice. Debtor understands and accepts that it is Debtor's sole and absolute responsibility to ensure that any and all payments are made on time and in Creditor's possession when due. . . . .

    *        *        *

    4. <u>Prepayment</u>. For Debtor to prepay this Promissory Note in full prior to the Maturity Date, Debtor must deliver to Creditor notice of intent to prepay al least 20 (Twenty) days in advance of Debtor's intended date of prepayment ("Notice of Prepayment").  With successful delivery of Notice of Prepayment to Creditor, Debtor may prepay this Promissory Note in whole, but only in whole, together with any accrued interest.  No partial payments shall be accepted.  If there is a conflict between the provisions of this Paragraph and any other terms and conditions outlined in this instrument, this Paragraph shall be subordinate to all others.  Notice of Prepayment will expire if prepayment is not made on the date stated therein.

2

5. <u>Default; Remedies</u>.

(a) Any failure by the Debtor to make any payment of principal, interest or any other charge, fee or payment due hereunder when the same becomes due and payable, whether by demand, acceleration, or otherwise, and the continuation of such failure for a period of 4 (four) calendar days shall constitute a default.

(b) Upon the occurrence of a Default, Debtor understands and acknowledges that Creditor, without any notice; shall have the following additional rights and freedoms, separate arid apart from any other rights outlined in this instrument:

(i) Proceed in foreclosure on the secured interest held by Creditor;
(ii) File a notice of default with credit rating agencies of choice;
(iii) Collect a compound penalty of $10 (ten Dollars) per calendar day, separate and apart from any ongoing amounts due under this instrument.

The *Promissory Note* made clear that only payments of interest would be accepted before full payment of the entire debt. Specifically, principal could not be paid before the maturity date unless the entire debt was paid.  In contrast, the note implicitly did not prohibit prepayment of interest, having set a deadline of the first of the month to pay interest but not having barred the debtor from paying any interest in advance.  The consequence was that the amount of principal would remain constant, with monthly interest on that principal sum remaining constant as well.[1]  The result is that if Davenport overpaid interest that had accrued on the debt, that excess payment would *not* be applied to principal (unless the full debt were being

---

[1]  However, delinquent interest also was to bear interest.

3

repaid in full at maturity or via the provision for prepayment of
the debt) and the excess payment would be held in reserve as a
credit towards obligations that came due in the future.

## II

## INTEREST WAS NOT TO BE PAID IN ADVANCE

The issue of whether interest was to be paid in advance
affects the amount of penalties that accrued for late payment of
interest.  There are two different issues.  First, when did
interest accrue?  Second, when was such accrued interest payable?

The court follows the law of the District of Columbia in
interpreting the *Promissory Note*.  As stated in *1010 Potomac
Associates v. Grocery Manufacturers of America, Inc.*, 485 A.2d
199, 205-06 (D.C. 1984):

> The first step in contract interpretation is determining
> what a reasonable person in the position of the parties
> would have thought the disputed language meant. *Intercounty Construction Corp. v. District of Columbia*,
> 443 A.2d 29, 32 (D.C. 1982).  The meaning must be
> ascertained in light of all the circumstances surrounding
> the parties at the time the contract was made. *Id.;*
> Restatement (Second) of Contracts § 202(1), 212(1)
> (1981).  The writing must be interpreted as a whole,
> giving a reasonable, lawful, and effective meaning to all
> its terms. *Vicki Bagley Realty, Inc. v. Laufer*, 482 A.2d
> 359, at 366 (D.C. 1984); *Davis v. Davis*, 471 A.2d 1008,
> 1009 (D.C.1984);  Restatement (Second) of Contracts
> § 202(2), 203(a) (1981).  If the document is facially
> unambiguous, its language should be relied upon as
> providing the best objective manifestation of the
> parties' intent. *Bolling Federal Credit Union v. Cumis
> Insurance Society, Inc.*, 475 A.2d 382, 385 (D.C. 1984).
> Extrinsic evidence of the parties' subjective intent may
> be resorted to only if the document is ambiguous. *Id.;
> Davis v. Davis*, *supra*, 471 A.2d at 1009.  However,
> extrinsic evidence may be considered to determine the

4

circumstances surrounding the making of the contract,
*Intercounty Construction Corp. v. District of Columbia*,
*supra*, 443 A.2d at 32; *In re Estate of Russell*, 69 Cal.2d
200, 209-212, 444 P.2d 353, 359-361, 70 Cal. Rptr. 561,
567-569 (1968) (en banc); Restatement (Second) of
Contracts § 212 comment b (1981); 4 Williston on
Contracts § 610A at 517-519, § 629 at 918-919, 923-925
(3d ed. 1961), so that it may be ascertained what a
reasonable person in the position of the parties would
have thought the words meant. *See District of Columbia
Department of Housing & Community Development v. Pitts*,
370 A.2d 1377, 1380 (D.C. 1977); *Pennsylvania Avenue
Development Corp. v. One Parcel of Land*, 494 F. Supp. 45,
49 (D.D.C. 1980).

When the written language of a contract is not susceptible of a
"clear and definite undertaking," it is appropriate to ascertain
the parties' intention "by examining the document in light of the
circumstances surrounding its execution and, as a final resort,
by applying rules of construction." *Joyner v. Estate of Johnson*,
36 A.3d 851, 855 (D.C. 2012), quoting *Foundation for the Pres. of
Historic Georgetown v. Arnold*, 651 A.2d 794, 796 (D.C. 1994).
As stated in *Washington Properties, Inc. v. Chin, Inc.*, 760 A.2d
546, 548 (D.C. 2000):

A contract is not ambiguous merely because the parties
disagree over its meaning, and courts are enjoined not to
create ambiguity where none exists. . . . Rather, a
contract is ambiguous when, and only when, it is, or the
provisions at controversy are, reasonably or fairly
susceptible of different constructions or
interpretations, or of two or more different meanings,
and it is not ambiguous where the court can determine its
meaning without any other guide than a knowledge of the
simple facts on which, from the nature of language in
general, its meaning depends. . . . Accordingly, [t]he
first step in contract interpretation is determining what
a reasonable person in the position of the parties would
have thought the disputed language meant.

However, under *1010 Potomac Associates* and *Washington Properties*,
the circumstances surrounding the making of the contract must be
considered in deciding whether the contract language is
ambiguous.  One of those surrounding circumstances is the normal
way in which an issue is handled.  Accordingly, when a contract's
literal meaning is substantially outside the norm of the usual
contract provision addressing an issue, "it is appropriate to
look beyond the four corners of the document as a 'guide,'
*Washington Props., Inc.*, 760 A.2d at 548, to ascertain whether
extrinsic evidence supports or challenges a literal
interpretation of the deed." *Joyner v. Estate of Johnson*, 36
A.3d at 857.  "[T]he burden of establishing the terms of a
contract rests upon the party suing thereon." *Nat'l Rifle Ass'n
v. Ailes*, 428 A.2d 816, 821 (D.C. 1981) (internal quotation marks
omitted).

A.

INTEREST FOR EACH MONTH
ACCRUED ON THE FIRST DAY OF THE MONTH

Interest is a charge for the use of money over a period of
time, and ordinarily interest is measured by the passage of time,
that is, interest is calculated on a daily basis.  This is made
evident by the parties both agreeing that interest owed for
September 21 to September 30, 2006, must be calculated on a daily
basis.

Interest ordinarily is not incurred as a debt – does not

6

accrue – until the passage of the period of time to which the

interest relates.  Here, the *Promissory Note* provided:

> Interest is calculated on a monthly basis accruing on the
> first calendar day of each month, at 9:00 AM, and will
> not be prorated for a daily calculation for any reason.
> Any consideration for prepayment shall include interest
> for the entire calendar month in which the prepayment is
> scheduled to be made.

Under this provision, in the event of prepayment under paragraph

4 in the midst of any calendar month, interest for the entire

month, based on the principal owed on the first of the month,

would be owed.

These provisions are arguably ambiguous.  First, it could

mean that interest was to have accrued on the first of each month

at 9:00 a.m. with respect to the prior month that had just

elapsed; and, second, it could mean that an entire month's

interest was to accrue as of 9:00 a.m. on the first of each month

before the month had transpired, that is, interest for the

entirety of a month was to accrue at 9:00 a.m. on the first day

of that month.

The argument in favor of the first interpretation is as

follows.  Interest is a charge for the use of money over time.

Such a charge ordinarily cannot be incurred prior to the time

elapsing for which the interest is charged.  The *Promissory Note*

did not alter that rule except in the case of prepayment of

principal in the midst of a month.  If the full amount of

interest for an entire calendar month was instead always a debt

7

incurred on the first of the month to which the interest relates, instead of the first of the month being when interest began to accrue, it would not have been necessary to say that there would not be any proration when prepayment of the entire debt was made in the midst of a month. In other words, the mention of no-proration if principal were prepaid in the midst of a month would be redundant surplusage if interest for an entire month were deemed to accrue on the first of that month. Once interest began to be earned, starting on the first of the month, then upon paying off the entire debt (or part of the principal) in the midst of the month, the debtor would still owe interest for the entire month based on the principal that was owed at the start of the month.

The arguments in support of the second interpretation are these. Interest was to accrue on the first of the month, and was not to be prorated "for any reason." That bar against proration would not make sense if one were to view the interest for a month as accruing on the first of the following month as an obligation owed, with interest earned based on the use of borrowed money that remains unpaid on any particular day. For example, once the month of June has transpired, it seems odd to say that despite the fact that interest does not accrue until the first of the following month (July), interest for June will be based on the principal that was unpaid as of the first of June. Instead, it

8

is more natural to view the interest for a month as accruing on
the first of that month, based on the principal then outstanding,
with the no-proration rule making clear that interest would not
be re-calculated based on a proportionate number of days in the
month if principal were paid in the midst of the month.  The only
reason interest would be prorated, but for the no-proration
provision, is if principal (or a portion thereof) had been paid
in the midst of a month (as interest on principal would obviously
accrue if principal had not been paid).  So it made sense to make
clear the meaning of the no-proration provision, and the fact
that interest for a month did indeed accrue on the first of that
month, by addressing the obvious instance in which the no-
proration provision would come into play, namely, when principal
was paid in the midst of the month.  Interest for the entirety of
a month accrued and became an obligation as of 9:00 a.m. on the
first of that month, unless the debt were prepaid in full before
that time.  This interpretation assured that even if the loan
were paid in full before maturity, Djourabchi and Welt would be
entitled, upon payment of the entire debt, to a full month's
interest for the month in which such payment of the entire
obligation occurred.

This second interpretation is the more natural
interpretation.  Although Djourabchi drafted the *Promissory Note*,
this more natural interpretation of when interest accrued makes

more sense and governs.  However, it does not matter which
interpretation is the correct interpretation.  Determining the
date on which interest accrues (for example, when interest is
earned for each day that passes) does not answer the question of
what is the due date by which such interest must be paid.

B.

THE ACCRUED INTEREST FOR A
MONTH WAS NOT TO BE PAID IN ADVANCE

Regardless of how the provision regarding accrual of
interest is interpreted, the *Promissory Note* did *not* require
interest for a month to be paid in advance of the conclusion of
the pertinent month.  The *Promissory Note* provided that payments
of interest were to be made on the first of each month, which
ordinarily would mean the first of the month following the month
for which interest was earned.  However, in the case of
prepayment of the entire debt in the midst of a month pursuant to
paragraph 4 of the *Promissory Note*, all accrued interest was to
be paid as part of the prepayment of the *Promissory Note*.  The
*Promissory Note* did not clearly and unambiguously provide that
interest would be paid before the month had concluded in other
instances of required interest payments.  The *Promissory Note*
cannot be read as literally providing that interest for a month
would accrue at 9:00 a.m. on that month, and was to be paid by
5:00 p.m. of *that* month: it was silent as to which month was the
month on which payment was due.  There was no "clear and definite

10

undertaking" regarding the date for paying interest such as to preclude resort to extrinsic evidence. *See Joyner v. Estate of Johnson*, 36 A.3d at 855. Even if the *Promissory Note* could be read as literally requiring that interest for a month be paid on the first of that month, such a reading would be far removed from the norm for a specification that interest must be paid in advance of the conclusion of the month, and, therefore, it is appropriate to look beyond the four corners of the *Promissory Note* "to ascertain whether extrinsic evidence supports or challenges a literal interpretation of the deed." *Joyner v. Estate of Johnson*, 36 A.3d at 857.

The *Promissory Note* did not alter the ordinary custom, to which Davenport's expert witness testified, that, absent a clear contractual provision to the contrary, interest is paid for a month after the expiration of that month to which the interest relates. As established by Davenport's expert witness, this *Promissory Note* did not comply with the commercial custom and practice that prevails when a note calls for payment of interest in advance. Although Djourabchi and Welt attempted to present contrary expert witness testimony, that witness's testimony was unpersuasive even if he could be deemed to have qualified as an expert witness.

When a commercial loan is intended to have the full amount of interest that will accrue for a month paid in advance at the

11

start of the month, the custom and practice is to so state in clear terms in the promissory note.  This *Promissory Note* failed to do that.  It makes no provision that interest is to be paid in advance.

As stated in 45 Am. Jr. 2d, [*Interest & Usury*] Sec. 28 (1999) (citing *Owens v. Graetzel*, 126 A. 224 (Md. 1924)):

> To make interest payable in advance, the intention to do so should be expressed in unambiguous and unmistakable language, and when an ambiguity in a contract calling for interest exists, so that it is not clear whether the interest is payable in advance, the interpretation least favorable to the one drawing up the contract will be adopted.

*See also BTD-1997-HHC LLC v. Cathedral Park Partnerships*, 760 So. 2d 1036 (Fla. Dist. Ct. App. 2000).  The *Promissory Note* failed to express in unambiguous and unmistakable language that the payment of interest due on the first of each month was to be a payment in advance of interest.  Accordingly, absent extrinsic evidence showing otherwise, interest was not to be paid in advance.

The extrinsic evidence does not establish that interest was to be paid in advance.  In interpreting ambiguous contract provisions, "[p]articularly significant is extrinsic evidence concerning the parties' negotiations prior to and contemporaneous with the formation of the agreement, as well as their course of conduct under the contract[ ]."  *Int'l Bd. of Painters & Allied Trades v. Hartford Accident & Indem. Co.*, 388 A.2d 36, 43 (D.C.

12

1978).  The issue of advance payment of interest was not
discussed as part of the negotiations.  As evidence of course of
conduct, Djourabchi and Welt point to Davenport's having paid the
interest for September 21, 2006, to September 30, 2006, in
advance, and his having made other advance payments of interest,
plus his failure to contest over time that he was in arrears in
paying interest.  As discussed below, these points do not
demonstrate that the *Promissory Note* ought to be interpreted as
requiring payment of interest in advance at the start of each
month.

   The payment of interest for September 2006 in advance proves
nothing.  As confirmed by Davenport's expert witness, it is not
atypical to pay in advance the interest accruing between the date
of the execution of a promissory note and until the first of the
succeeding month (when interest would otherwise be due).  Case
law as well confirms that this is the case.  *See Horn v. Nat'l
Homes Acceptance Corp.*, 453 F. Supp. 40, 42 (N.D. Ill. 1978),
*aff'd*, 601 F.2d 595 (7th Cir. 1979) ("Except for the interest
from November 18, 1975 to November 30, 1975, the Horns had never
been required to pay interest in advance."); *Schmidt v.
Interstate Fed. Sav. & Loan Ass'n*, 421 F. Supp. 1016, 1018
(D.D.C. 1976) (("An examination of the loan documents indicates
that, before the date of prepayment with one insignificant
exception, the Schmidts were never required to pay interest in

13

advance.  Settlement occurred on June 28, 1972, and on that date
two days advance interest was paid to bring the loan up to July 1
and put it on a first-of-the-month basis. The next payment was
due on August 1, 1972, and covered the interest charge for July.
From that time forward, monthly payments were called for on the
first of each month until June 1, 2002, covering interest for the
immediately preceding month.")

As to the second point, prior to the execution of the
*Promissory Note*, Djourabchi did not communicate to Davenport his
view of the *Promissory Note* as requiring advance payment of
interest.  Davenport was unsophisticated in financial matters,
and was either intimidated by Djourabchi's insistence that he was
required to pay interest for a month on the first of that same
month or humored Djourabchi by making some payments of interest
in advance as a showing of good faith.

Illustratively, at one point, Davenport fell into arrears in
paying his first mortgage with Bayview, and Djourabchi demanded
that Davenport provide proof that the Bayview loan was current,
and demanded that Davenport fully pay Djourabchi by September
2008 or he would foreclose on the loan or sell it to a more
aggressive lender.  Davenport could not fully pay the loan by
September 2008, so he reached an oral agreement that he would pay
an extra $300 a month in addition to the regular payment of $700.
Davenport feared that Djourabchi would foreclose and paid the

14

extra $300 to Djourabchi to persuade him not to foreclose.

At this point, Davenport had still not consulted an attorney regarding his rights under the *Promissory Note*.  Not until May 2009 did Davenport consult with an attorney regarding the *Promissory Note*.  Davenport consulted with Morgan Fisher about his financial problems, and began looking into filing a bankruptcy case, and in connection with that asked Fisher to look at the *Promissory Note*.

That Davenport, an unsophisticated layman, acceded to the entreaties and threats of Djourabchi, a lawyer, ought not alter the terms of *Promissory Note* that could be altered only by an agreement in writing.

On September 2, 2009, Davenport filed a prior bankruptcy case, Case No. 09-00772 in this court, under chapter 13 of the Bankruptcy Code.  Djourabchi and Welt filed a claim showing no interest and no penalties owed under the *Promissory Note*. Interest and penalties would have been owing on the loan if interest was required to be paid in advance.  The filing of the proof of claim was therefore inconsistent with assertion by Djourabchi and Welt that interest was payable in advance.  The filing of that proof of claim is a course of conduct consistent with viewing the *Promissory Note* as not calling for interest to be paid in advance.  Even if Davenport's paying interest early could be viewed as a course of conduct supporting the view of

15

Djourabchi and Welt that interest was to be paid in advance, that

course of conduct is canceled out by their course of conduct in

filing a proof of claim showing no interest and no penalties owed

(which would not have been the case had interest been payable in

advance).

Davenport himself engaged in a similar course of conduct in

connection with that case that weighs in favor of viewing the

*Promissory Note* as not requiring payment of interest in advance.

He provided in his confirmed plan for Djourabchi and Welt to be

paid by him directly instead of via plan payments.  In contrast,

the confirmed plan provided that payments to cure arrears would

be made to two other secured creditors, Bayview and Litton Loan.

As I have explained in a *Memorandum Decision* dated December 31,

2015, in Case No. 09-00772 (Dkt. No. 324), if interest and

penalties were outstanding on the *Promissory Note*, it would have

been to Davenport's advantage to obtain a confirmed plan calling

for the same level of plan payments but calling for a cure of the

arrears owed under the *Promissory Note.*  Had such a plan been

confirmed, Davenport would have paid no more to the trustee (than

under the plan that *was* confirmed) and would have no prepetition

arrears owed under the *Promissory Note.*  The confirmed plan, in

contrast, was a lucky break for the holders of non-priority

unsecured claims (as they received more than they would have had

the trustee paid out of the plan payments the prepetition arrears

16

claims that Djourabchi and Welt have belatedly asserted were owed under the *Promissory Note*). Davenport's conduct in that prior bankruptcy case demonstrates that, like Djourabchi and Welt, he did not view the *Promissory Note* as being in arrears, and thus did not view the *Promissory Note* as calling for interest to be paid in advance.

Because the evidence fails to show that the *Promissory Note* had a definite meaning as to when interest was payable, it is appropriate for the *Promissory Note* to be construed strongly against the party who drafted it. *1901 Wyoming Ave. Coop. Ass'n v. Lee*, 345 A.2d 456, 462-63 (D.C. 1975). Djourabchi drafted the *Promissory Note*, and was excited, as a lawyer, that he was engaging in a lawyer task he had not engaged in during his regular employment as a lawyer. It was he, not Davenport (a non-lawyer), who drafted the language concerning payment of interest and when it would accrue without any proration. Davenport may have negotiated regarding the interest rate to be paid, but he did not engage in negotiations regarding the provisions at issue regarding the accrual of interest and the timing of the payment of interest.

Any provision for payment of interest in advance was a provision that would have benefitted Djourabchi, and if he wanted such a provision in the *Promissory Note*, he readily could have--and he ought to have--expressed in unambiguous and

17

unmistakable language that interest was to be paid in advance. This weighs heavily in favor of finding no provision for advance payment of interest.

Djourabchi is a lawyer and was practicing as such when the *Promissory Note* was executed. Davenport is a lay person whose profession is construction work and running a restaurant. The difference in the sophistication of Djourabchi and Davenport in dealing with legal matters is an additional factor that weighs heavily in favor of interpreting the *Promissory Note* as not calling for payment of interest in advance.

The *Promissory Note* included a provision in paragraph 7 that "[t]his Promissory Note may not be amended without the written acceptance by all parties bound by this instrument." The parties never entered into any written amendments of the *Promissory Note*.

III

DAVENPORT IS ENTITLED TO CREDIT FOR A $1,500 PAYMENT

Djourabchi and Welt dispute a $1,500 payment for which Davenport claims credit. Davenport did make this $1,500 payment, and it was intended for this loan, not for an alleged purchase of wood from Djourabchi and Welt.

IV

NO ATTORNEY'S FEES ARE OWED

Djourabchi and Welt failed to provide the detailed types of time records that are required in order to determine reasonable

18

fees that Davenport was obligated to pay.  Fees were paid, but
there is no evidence that the fees were for this Promissory Note
(versus another obligation), or that the fees related to a
default such as to trigger an entitlement to reasonable fees (and
the record suggests that Davenport was most of the time never in
default).  Moreover, under 11 U.S.C. § 506(b), the fees must be
reasonable to be allowed as part of a secured claim, and "in
applying the 'reasonableness' limitation of § 506(b), the court
must apply federal standards." *In re Hoopai*, 581 F.3d 1090, 1101
(9th Cir. 2009).  The "lodestar" factors are applicable when
making a determination of reasonable attorney's fees in
bankruptcy cases.  *Harman v. Levin*, 772 F.2d 1150, 1152 n.4 (4th
Cir. 1985).  The evidence here, establishing only that fees were
paid, does not permit the court to apply the lodestar analysis to
determine whether the fees were reasonable.  Accordingly, no
attorney's fees can be included as part of the allowed secured
claim of Djourabchi and Welt.

V

DAVENPORT'S EXPERT WITNESS'S
CALCULATION OF THE DEBT OWED IS CORRECT EXCEPT FOR
MISCALCULATING THE AMOUNT OF THE REQUIRED FIRST INTEREST PAYMENT

Davenport's expert submitted a calculation of the debt owed
that accepted Djourabchi and Welt's version of the payment
history except that the report, correctly, gives Davenport credit
for the disputed $1,500 item.  That calculation shows a debt owed

19

of $80,000 for which there is a credit of $26,425.87.

The calculation is correct except for a minor error regularing the amount of interest that was owed for the last nine days in September after the loan origination date of September 21, 2006.  Both Davenport and Djourabchi's testimony was consistent: Djourabchi did the calculation at the time the note was signed.  (Davenport recalled that Djourabchi did the calculation on a napkin; Djourabchi testified he used a calculator.)  Djourabchi and Welt's position now is that Davenport should have paid $209.97; Davenport's position is that Djourabchi told him the charge was $207, and that that was what he paid.  The calculation for each position is thus: if the per-day interest was calculated by month, then in the month of September (which has 30 days), the daily interest charge is $23.33 per day.  For nine days' interest, the total would be $209.97.  On the other hand, if the per-day interest was calculated by year, than the yearly total is $8,400, and in 2006 (which had 365 days), the daily interest charge is $23.01 per day.  The total for nine days' interest would be $207.09.

I find that Djourabchi and Welt's calculation of daily interest by month is the more natural and standard practice, as confirmed by $700 being considered by both parties as the amount owed each month.  Thus, Davenport owes an additional $2.97 for

20

the month of September.[2]  Therefore, I reduce the credit of $26,425.87 by $2.97 for the error in computing the interest owed for the first nine days of the loan, resulting in an adjusted credit of $26,422.90.

VI

In accordance with the foregoing, an order follows allowing the claim of Djourabchi and Welt in the amount of $80,000 as of the commencement of this case, with a credit for future interest payments (or for prepayment of the debt) in the amount of $26,422.90, and otherwise disallowing the amount claimed to be owed as of the commencement of the case.

[Signed and dated above.]

Copies to: Recipients of e-notification of filings.

---

[2]  Because I credit Davenport's testimony that Djourabchi told him to pay $207, Djourabchi would be estopped from charging him default penalties for those nine days (if the payment of $209.97 was due as of the execution of the *Promissory Note*, which it was not).  Because the $209.97 was not due until October 1, 2006, there was no default giving rise to penalties for this shortfall of $2.97: Davenport made a $700 payment a month early on October 1, 2006, and stayed ahead of payments for the remainder of the loan.