The document below is hereby signed.

Signed: September 8, 2017



S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re                          )
                               )
STUART MILLS DAVENPORT,        )    Case No. 15-00540
                               )    (Chapter 13)
        Debtor.                )
                               )    **Not for Publication in**
                               )    **West's Bankruptcy Reporter**

<u>MEMORANDUM DECISION AND ORDER RE MOTIONS IN LIMINE</u>

The debtor has filed a motion in limine (Dkt. No. 154)
requesting that the court prohibit his creditors, Babak
Djourabchi and Monica Welt ("creditors"), from offering claims
for attorneys' fees and another motion in limine (Dkt. No. 156)
to require plan payments be applied to interest and principal.
The debtor also asks the court to clarify the application of the
$26,422.90 credit in its order issued on July 21, 2016 (Dkt. No.
110).  For the reasons stated below, the creditors will be
allowed to offer claims for attorneys' fees related to the
bankruptcy case, but attorneys' fees related to the litigation
before the District Court will depend on the outcome of that
case.  The plan has modified the creditors' right to a lump sum
payment of principal, but the plan does not modify the creditors'

rights to apply the payments to interest and all other allowed costs and fees before principal, provided that once all interest, costs and fees have been paid, the remainder of plan payments must be applied to the principal.  I will also clarify that the credit of $26,422.90 may be applied to interest in the amount of $2,139.93, the amount that had accrued from the petition date to the date the plan was confirmed, and as there were no other incurred costs, fees, or expenses, the remaining $24,282.97 of the credit shall be applied to principal leaving the creditors a secured claim of $55,717.03 as of the confirmation date.

I

In September 2006, the debtor and the creditors executed a promissory note ("Note") and a deed of trust ("Deed")for a loan of $80,000 secured by the debtor's residence.  While the Note does not specifically anticipate the payment of attorneys' fees, paragraph 6 of the Note provides:

> 6.  <u>Application of Payments</u>.  Creditor shall have the sole, exclusive, and unreviewable right to, unilaterally and without notice to or consent of any person, allocate any and all payments which may be received by or tendered to Creditor made by Debtor or any other person at any time or from time to time and which relate in any way to the sums promised hereunder, including: (I) the payment of any costs and expenses incurred by Creditor to enforce any rights hereunder; (ii) accrued but unpaid interest, and all other charges, fees or payments due hereunder; and (iii) principal.

The Deed on the other hand does anticipate the payment of attorneys' fees and in Paragraph 9 provides:

2

**9. Protection of Lender's Interest in the Property and Rights under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or ©) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and ©) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.

Additionally, paragraph 14 of the Deed provides:

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorney's fees, property inspection and valuation fees.

The Note also describes how payments are to be received and applied to the debt. Paragraph 2 provides:

2. <u>Payments of Interest and Fees</u>. All payments are due by 5:00 PM on the first calendar day of each month. Debtor understands and acknowledges that he has requested to make interest—only payments to Creditor, and Creditor has made this Promissory Note in full reliance of the same—therefore, monthly payments shall remain interest-only for life. Interest is calculated on a monthly basis accruing on the first calendar day of each month, at 9:00 AM, and will not be prorated for a daily calculation for any reason. Any consideration for prepayment shall include interest for the entire calendar

3

month in which the prepayment is scheduled to be made.

Additionally, paragraph 4 provides:

> 4. <u>Prepayment</u>. For Debtor to prepay this Promissory Note in full prior to the Maturity Date, Debtor must delivery to Creditor notice of intent to prepay at least 20 (Twenty) days in advance of Debtor's intended date of prepayment ("Notice of Prepayment"). With successful delivery of Notice of Prepayment to Creditor, Debtor may prepay this Promissory Note in whole, but only in whole, together with any accrued interest. No partial payments shall be accepted. If there is a conflict between the provisions of this Paragraph and any other terms and conditions outlined in this instrument, this Paragraph shall be subordinate to all others. Notice of Prepayment will expire if prepayment is not made on the date stated therein.

Finally, paragraph 3 of the Note sets the maturity date at September 22, 2016, wherein "[t]he Principal Balance and all Interest and Fees shall be due and payable."

In 2009, the debtor filed a petition commencing a prior bankruptcy case. The creditors filed a proof of claim supported by the Note and Deed. The creditors did not claim arrearages on their proof of claim, and, accordingly, the debtor's plan provided that the claim would be paid by the debtor directly without the necessity of plan payments to cure any arrearages. The debtor's chapter 13 plan in 2010 was confirmed and completed and the debtor received a discharge on June 26, 2015. At some point thereafter, the creditors contended that there were arrearages on the debt, and initiated foreclosure on the property, providing notice that the property would be sold on October 20, 2015.

4

The debtor filed again for bankruptcy on October 14, 2015, in chapter 13 and filed a proposed plan the next day.  Under 11 U.S.C. § 1326(a)(1), plan payments were required to commence no later than November 13, 2015.  The creditors' proof of claim in the second case asserted a claim of $121,813.88 that included interest, arrearages, late fees, costs, and attorneys' fees.  The creditors further filed a motion to dismiss and an objection to the debtor's plan.  The debtor filed an amended plan on December 16, 2015, that provided in paragraph D that the creditors' allowed secured claim would receive "FULL PAYMENT PLUS 6% POST-CONFIRMATION INTEREST PER ANNUM."  Further, paragraph E provided that "THE FOREGOING PAYMENTS ON ALLOWED SECURED CLAIMS SHALL BE PAID IN EQUAL MONTHLY PAYMENTS OVER 60 MONTHS BUT THE TRUSTEE MAY PAY ANY SUCH CLAIM A LARGER AMOUNT IN ANY MONTH."

The creditors filed an objection to the amended plan.  The debtor also filed an objection to the creditors' proof of claim. The court conducted a confirmation hearing on January 15, 2016, and considered the creditors' objections and the motion to dismiss.  The court entered an order confirming the plan that said in part:

   1. Once the objection to the claim of Babak Djourabchi and Monica Welt is decided, the payments to them under the plan shall be based on the court's determination of the amount owed them as of the date of entry of this order confirming the debtor's plan.

   2. Until the objection to claim is decided, the trustee shall make monthly distributions to Babak

> Djourabchi and Monica Welt equal in amount to (or
> exceeding) the minimum monthly payment due them under
> the plan based on the amount owed them as of the date
> of entry of this order pursuant to their proof of claim
> (as though no objection to claim had been filed) but
> such payments in the aggregate shall not exceed the
> $52,000 amount the debtor concedes is owed on that
> claim.

No party sought a review of that order or filed a notice of

appeal.

On May 24, 2016, the court commenced trial on the claim

objection.  The debtor's expert witness concluded in his report

that the debtor was never in default and made an overpayment of

$26,425.87.  The court found a miscalculation of $2.97 and

entered a memorandum decision and an order on July 21, 2016, that

substantially adopted the debtor's expert witness's testimony.

The court ordered:

> that the claim of Djourabchi and Welt is allowed in
> the amount of $80,000 as of the commencement of this
> case, with a credit in favor of the debtor of $26,422.90
> for interest accruing after the commencement of the case
> (or for payment of other components of the allowed
> claim), and the claim of Djourabchi and Welt is otherwise
> disallowed, except with respect to amounts allowable
> under 11 U.S.C. § 506(b) incurred after the commencement
> of the case.

Order at 1-2.  The court further held in its memorandum decision

that as regarding interest versus principal, the Note anticipated

all payments made under the Note would be interest payments, and

no payments would be made on the principal, unless the principal

was paid in full.  "[E]xcess payments would be held in reserve as

credit to be applied towards obligations that came due in the

future." Memorandum Decision at 3-4. The court further held that the debtor had not been in arrears.

Shortly after the court entered the above order, the debtor filed suit in the District Court against the creditors asserting claims of wrongful foreclosure, breach of contract, violation of D.C. interest and usury laws (D.C. Code §§ 28-3301, et seq.), and tortious interference with business relationship.

The chapter 13 trustee made calculations of payments under the plan that she believed would pay the claim in full. The debtor provided the trustee with funds to pay the claims and was advised by the trustee that the creditors' claim had been paid in full. The debtor then filed a motion to modify payments under the plan to reduce his monthly payments. The creditors in response filed a motion in which they asserted that the claim had not been paid in full. They asserted that they were owed attorneys' fees for legal fees in the bankruptcy case and for their defense in the District Court case, and they additionally asserted that they were not bound to accept payment on principal except in one full lump sum payment.

II

A

The debtor contends that the creditors do not have a right to legal fees under the Note or the Deed. Federal courts generally are required to look to nonbankruptcy law to determine

7

creditors' claims in bankruptcy cases.  *Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co.*, 549 U.S. 443, 450-51 (2007)(holding that the substance of claims are generally left to determination under state law.).  D.C. law, in general, follows the American Rule, under which each party will bear the costs of its own legal fees, unless the case falls under an exception. D.C. Code § 15-701; *Nest and Totah Vanture, LLC v. Deustch*, 31 A.3d 1211, 1229 (D.C. 2011).  These exceptions include cases where fee-shifting is "authorized by statute, by contract, or by the court's exercise of equitable power when the interests of justice so require." *Cathedral Ave. Co-Op., Inc. v. Carter*, 947 A.2d 1143, 1159 (D.C. 2008)(internal quotes deleted).  However, in a bankruptcy case, the allowance of such fees as a secured claim is limited by 11 U.S.C. § 506(b) to reasonable fees, and that is a Federal question. *See In re Welzel*, 275 F.3d 1308, 1317-18 (11th Cir. 2001).[1]

The present case involves a contractual obligation of the debtor to pay the creditors' attorneys' fees under certain situations as listed in the Note and the Deed.  The Note allows for the creditors to apply monthly payments to costs and expenses incurred in the enforcement of any rights under the Note, interest and all other charges and fees, and the principal.  The

---

[1]  As to fees that are found to be owed under state law but that are not reasonable under 506(b), the fees might be treated as an unsecured claim.  *See In re Welzel*, 275 F.3d at 319-20.

8

Deed provides for payment of reasonable attorneys' fees in three instances: first, if the debtor fails to perform under the agreement; second, for "legal proceeding[s] that might significantly affect the Lender's interest in the property and/or rights" under the agreement; and finally, if the borrower abandons the property.  Deed ¶ 9.  As the Note and Deed are valid contracts, this case falls under an exception to D.C. law and the creditors have a right to collect attorneys' fees as outlined by the Note and Deed.

There are two categories of payments at issue under this motion in limine.  There are prepetition and postpetition attorneys' fees.  The court has already decided and held that the creditors are not entitled to prepetition attorneys' fees.  Moreover, the creditors do not request prepetition attorneys' fees.  Therefore, the creditors will not be allowed to apply the debtor's payments toward prepetition attorneys' fees.

As for postpetition attorneys fees, there are two issues for the court to consider, 1) whether the creditors can claim attorneys' fees associated with the bankruptcy case, and 2) whether creditors can claim attorneys' fees associated with District Court case.  I will address each issue in turn.

1

The debtor contends that the creditors are not entitled to claim attorneys' fees associated with the bankruptcy case.  An

exception to the American Rule is an agreement to shift
attorneys' fees by contract. *Carter*, 947 A.2d at 1159. However,
the contract will only be applied if the language in the contract
reflects an agreement that the fees are being shifted. *Id.* The
court should make a "close examination of any relevant
contractual language" to determine the scope of the agreement for
shifting attorneys' fees. *Id.* at 474.

D.C. courts have construed fee-shifting provisions very
narrowly. In *Oliver T. Carr Co. v. United Tech. Comm. Co.*, the
parties' contract only allowed for fee-shifting in cases where
the seller was collecting amounts due under the contract. 604
A.2d 881, 883 (D.C. 1992). As such, the court found that
attorneys' fees could be awarded on a counterclaim for an unpaid
10 percent of the contract price. *Id.* at 883-84. However, the
court did not allow attorneys' fees incurred in defense of the
buyer's initial breach of contract and breach of warranty claims,
because the defense was not related to collecting unpaid fees.
*Id.* at 885. Additionally, in *Mitchell v. Estate of Raleigh*, the
court found that a deed with language reading "all guarantors
hereby agree that in the event this note is placed in the hands
of an attorney for collection after a declaration of default they
agree to pay all costs of collection, including but not limited
to attorneys fees of Fifteen percent," was not broad enough to
cover actions based on a breach of contract, but was limited

10

specifically to cases where the deed was placed with an attorney for collection after a declaration of default.  947 A.2d 464, 474-75 (D.C. 2008).  The court further held in *Estate of Raleigh* that a note that read: "If suit is brought to collect on this Note, the Note holder shall be entitled to collect all reasonable costs and expenses of the suit, including, but not limited to, reasonable attorney[s'] fees" could only be used to collect in legal proceedings specifically for collection on the note.  947. A.2d at 4757-76.

Given this background, I find that the language in the Deed is very clear and that the bankruptcy proceedings fall within the allowed fee-shifting provision of the Deed.  The Deed clearly states that the creditors are entitled to reasonable attorneys' fees, associated with "a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy . . .)."  Deed ¶ 9.  The debtor claims that this provision does not allow recovery because the debtor never denied the creditors' claim, or denied that the claim was secured, or took any action to avoid the creditors' lien.  Additionally, the debtor claims that the bankruptcy case did not affect the creditors' interest in property or rights under the Deed.  Even if that is true, the language of the Deed says that the creditors have a right to attorneys' fees if the legal action "*might*

11

significantly affect" the creditors' interests in property or
rights under the agreement.  It does not say attorneys' fees are
allowed only when the action does in fact significantly affect
the interests and rights of the creditors.  Further, the Deed
contemplates and lists bankruptcy specifically as an example of
the type of legal proceeding it was anticipating.  Additionally,
any action taken in bankruptcy has the potential of significantly
affecting the rights of a creditor.  Therefore, the Deed does
give the creditors the right to claim reasonable postpetition
attorneys' fees incurred in the bankruptcy case.

2

        The issue as to whether the creditors are entitled to
attorneys' fees in the District Court case is a little more
complicated.  The debtor contends that the creditors are not
enforcing the agreement, nor are they protecting their interest
in the property or rights under the agreement in the District
Court case.  In the District Court, the debtor is claiming the
creditors acted against his rights under the agreement and in the
process have committed certain torts and violated certain legal
duties.  However, in defending against the debtor's allegations,
the creditors are in fact defending their rights under the
agreement.  Should the creditors prevail, they would retain
certain rights that are being scrutinized by the court.
Therefore, should the creditors prevail in their case, they would

12

have a right to attorneys' fees applied to their claim as such
fees will have been incurred in a legal proceeding that might
significantly affect their rights under the Deed.

On the other hand, should the creditors lose, then the
agreement clearly did not grant them such rights, and the
creditors violated their duties under the agreement.  Further, to
allow the creditors to claim attorneys' fees when they lose such
a case would be contrary to public policy and would be denied on
that ground.  In that case, they should not be permitted to
collect attorneys' fees for defending rights they never had.
Accordingly, they must also be the prevailing party.  *See Carter*,
947 A.2d at 1159("[t]he prevailing party may recover fees and
costs from the losing party if authorized by statute, by
contract, or by the court's exercise of equitable power when the
interests of justice so require." (internal quotes deleted)).  As
the District Court case is still pending, I will set that aspect
of this matter aside to be further decided when that case is
resolved.

B

The debtor contends that the creditors' claim for attorneys'
fees is barred by the *res judicata* effect of the court's order
disallowing the creditors' claim in part.  However, the court's
order held specifically "the claim of Djourabchi and Welt is
otherwise disallowed, except with respect to amounts allowable

13

under 11 U.S.C. § 506(b) incurred after the commencement of the case." Attorneys' fees are claims allowable in § 506(b), and the order left open all fees after the commencement of this case. Therefore, the creditors' claim for attorneys' fees is not barred by *res judicata*.

### III

The parties disagree on how plan payments should be applied toward the creditors' claim. The Bankruptcy Code allows for chapter 13 plans to modify the rights of claims holders, except "a claim secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2). The Supreme Court has explained that this provision protects the property rights of the creditors as enforceable by state law. *Nobleman v. American Sav. Bank*, 50 U.S. 324, 329 (1993). Congress amended the Bankruptcy Code to allow for modification of secured claims protected by § 1322(b)(2) if the final payment of the secured claim became "due before the date on which the final payment under the plan is due." 11 U.S.C. § 1322(c)(2). The purpose of this amendment was to help debtors who were unable under § 1322(b)(2) to cure stub or short-term mortgages that matured or ballooned prior the filing of a petition. *See Witt v. United Companies Lending Corp. (In re Witt)*, 113 F.3d 508, 514 (4th Cir. 1997). A modification under § 1322(c)(2) must follow the restrictions laid out in

14

§ 1325(a)(5).  A plan under chapter 13 that provides for periodic
payments on allowed secured claims must distribute such payments
"in equal monthly amounts."  11 U.S.C. § 1325(a)(5)(B)(iii)(I).

A

The debtor asserts that the equal monthly payments under the
plan must go toward interest and principal and, for support,
cites *In re Gray*, wherein the court held that "[i]n order to
satisfy  the requirements of section 1325(a)(5)(B)(ii), plan
payments must simultaneously include principal and interest."
No. 07-07380, 2008 WL 5068849, at *5 (D.P.R. Nov. 25, 2008).  The
creditors argue, however, that to require them to accept payment
on principal would modify their rights under § 1322(b)(2),
because their claim is secured by the debtor's principal
residence.  It is clear that 11 U.S.C. § 1322(c)(2) does allow
the debtor to modify certain rights on a secured claim protected
by 11 U.S.C. § 1322(b)(2).  The creditors retained the right to
have the amount owed as of the confirmation date calculated in
accordance with their right not to accept payments of principal,
but once the plan was confirmed, that changed as to post-
confirmation payments.  The plan, in other words, caused the debt
to balloon to the amount owed on the confirmation date, with
interest of six percent per anum to then accrue after the
confirmation date on all amounts then outstanding on the
confirmation date (including both interest and principal owed as

15

of the confirmation date). [2]

B

It therefore becomes necessary for the court to look at the Note and determine what rights it gives to the creditors in applying payments to the debt. The court follows D.C. law when interpreting the Note. *In re Davenport*, 15-00540, WL 4016991, at *2 (Bankr. D.D.C. July 21, 2016). "The first step in contract interpretation is determining what a reasonable person in the position of the parties would have thought the disputed language meant." *Intercounty Construction Corp. v. District of Columbia*, 443 A.2d 29, 32 (D.C. 1982). "If the document is facially unambiguous, its language should be relied upon as providing the best objective manifestation of the parties' intent." *Bolling Federal Credit Union v. Cumis Insurance Society, Inc.*, 475 A.2d 382, 385 (D.C. 1984). If the contract is still unclear under a reasonable person standard, the contract will be construed strongly against the drafter. *See 1901 Wyoming Ave. Co-op. Ass'n v. Lee*, 345 A.2d 456, 462-463 (D.C. 1975).

Paragraph 6 of the Note allows the creditors to unilaterally apply payments to "(I) the payment of any costs and expenses

---

[2] Interest rates can be modified by § 1322(c)(2). *In re Hubbell*, 496 B.R. 784, 789-790 (E.D.N.C. 2013). Therefore, the creditors' right to a 10.5 percent interest rate under the Note has been modified to a six percent interest rate under the plan to be paid on the aggregate amount owed on the confirmation date.

16

incurred by Creditor to enforce any rights hereunder; (ii) accrued but unpaid interest, and all other charges, fees or payments due hereunder; and (iii) principal." Accordingly, the creditors may apply plan payments to all costs, interest, and principal as they choose. However, there are limits to the creditors' discretion. The Note only allows creditors to apply payments to all *incurred* costs and expenses, all *accrued but unpaid* interest, and principal. The plan contemplates that the debt owed on the confirmation date will be paid in full with six percent per annum interest accruing on that amount in order to assure that the creditors receive the present value of their claim as required by 11 U.S.C. § 1325(a)(5)(B)(ii). It would be inconsistent with § 1325(a)(5)(B)(ii) for payments to be held in reserve for application to future interest accruals. This means that a plan payment can go toward all interest accrued up to that moment the payment is received, but cannot go toward future interest payments. The plan payment may also be applied to all costs and expenses the creditors have incurred, up to that moment in time, but cannot go toward costs and expenses not yet incurred. Finally, any balance of a payment, after all interest accrued, and costs and expenses incurred have been paid, must be applied to the principal.

The creditors contend that they retain the right under the Note to only accept a full lump payment of the principal, and

17

implicitly to accept periodic payments on interest, costs, and
other expenses.  However, the Note does not support the
creditors' contention.  The creditors rely on this court's
holding in its memorandum decision (Dkt. No. 109) issued on July
21, 2017, where the court held that the Note "made clear that
only payments of interest would be accepted before full payment
of the entire debt."  Memorandum Decision at 3.  However, this
court only recognized that "principal could not be paid before
the maturity date unless the entire debt was paid."  *Id.*  This
court's holding did not opine how payments after the maturity
date, or under the plan, would be applied toward principal.
Under 11 U.S.C. § 1325(a)(5)(B)(iii)(I), the plan permissibly
called for equal monthly payments of the debt, and after
satisfaction of the non-principal amounts that had been incurred
the balance of the payment must be treated as payment of
principal.

The creditors further rely upon language in paragraph 4 of
the Note that says: "Debtor may prepay this Promissory Note in
whole, but only in whole, together with any accrued interest.  No
partial payments shall be accepted."  However, the creditors'
reliance on this paragraph is misplaced.  Paragraph 4 only
applies toward *prepayment* of the Note, it has nothing to do with
payment on the matured Note.  When the Note matured, paragraph 4
expired and was no longer applicable toward any payment made by

the debtor.

The creditors could contend that paragraph 2 also supports their position.  Paragraph 2 provides that "monthly payments shall remain interest-only for life."  However, again, once the Note matured, the whole debt became due and payable.  Monthly payments under the Note ceased, and Paragraph 2 also expired and became inapplicable toward any payment plan the debtor would subsequently enter into.  It is true that the creditors are receiving monthly payments under the plan, but payments of the debt pursuant to the plan are bound by the terms of the plan, not a conflicting provision of the Note.

I do not find the Note ambiguous.  Its clear terms hold that the creditors have the discretion to apply payments as they choose toward accrued interest, incurred costs and expenses, and principal and upon maturity, the Note makes all components of the debt equally due and payable, meaning that any payments toward the debt would be amortization payments.  However, even if there was an ambiguity, one of the creditors, Babak Djourabchi, was the drafter of the Note, and I would interpret the Note against the drafter in accordance with the above discussion.

C

Even if the Note does allow the creditors to claim payment of principal via a lump sum, the confirmed plan calls for payment of the claim in equal monthly payments, and is binding on the

19

creditors.  As the debtor notes, the creditors' contention is
inconsistent with § 1325(a)(5), because a balloon payment at the
end of the plan would not be an "equal monthly amount[]."  When
the trustee pays the claim in equal monthly amounts, then at some
point, during the life of the plan, the creditors will be
required to apply the plan payments to principal.

Even if the confirmed plan could be revisited , 11 U.S.C.
§ 1322(c)(2) permitted this type of modification.  The creditors
contend that § 1322(c)(2) permits payments to be modified, but
does not permit the claim itself to be modified, and that "the
debtor is still required to pay the 'full amount of the allowed
secured claim.'"  *In re Witt*, 113 F.3d at 512 (quoting H.R. Rep.
No. 103-835, at 52 (1994)).  However, *In re Witt* in fact supports
the exact opposite conclusion.  The issue in *In re Witt* was
whether the claim could be bifurcated into secured and unsecured
parts, not whether the plan could provide for payment in a
different manner than specified by the promissory note.  The
court in *In re Witt* recognized that the purpose of § 1322(c)(2)
was to permit the debtor to pay off matured mortgages that
ballooned prior to the date of the final payment under the plan.
The court explained in *In re Draper* that "[s]ection 1322(c)(2)
allows a debtor to modify the rights of a claimholder who holds a
security interest in the debtor's home so long as the last
payment on the debt underlying the claim is due prior to the

final payment in the Chapter 13 plan." No. 15-34127, 2015 WL
7264669, at *3 (E.D. Va. Nov. 17, 2015). Here, the Note matured
on September 22, 2016, and upon that date all principal and
interest became due. This due date is before November 13, 2020
(60 months after the plan payments were required to commence
under § 1326(a)(1)) when the final payment under the plan would
be due. The Note was a balloon mortgage requiring one large
payment of all "[t]he Principal Balance and all Interest and
Fees." Note, ¶ 3. This is the exact kind of situation
§ 1322(c)(2) was designed for and by its express language
§ 1322(c)(2) overrides the anti-modification provision of
§ 1322(b)(2). Thus, the creditors' secured claim can be modified
under the plan so long as the modification is one spelt out in
§ 1325(a)(5), which is precisely what occurred here.

The debtor does not need to make a full lump payment on the
principal to pay the "full amount of the allowed secured claim."
*In re Witt*, 113 F.3d at 512. Whether the debtor pays the full
$80,000 in one lump sum, or over a period of years, the creditors
will still get their full $80,000. Thus the full amount of the
creditors' secured claim will be paid.

The creditors argue that even if this kind of modification
were permissible under § 1322(c)(2), the confirmed plan did not
modify the creditors' rights. As noted above, the plan does in
fact make these modifications. Specifically, the plan requires

21

in paragraph D. "FULL 100% PAYMENT PLUS 6% POST-CONFIRMATION
INTEREST PER ANNUM" and in paragraph E., "THE FOREGOING PAYMENTS
ON ALLOWED SECURED CLAIMS SHALL BE PAID IN EQUAL MONTHLY PAYMENTS
OVER 60 MONTHS BUT THE TRUSTEE MAY PAY ANY SUCH CLAIM A LARGER
AMOUNT IN ANY MONTH."  These provisions applied to the creditors'
claim and provided that the creditors would be paid in full in
equal monthly payments (or a larger amount in any month exceeding
1/60th of the required aggregate payments) over a period of 60
months.  Therefore, the creditors' right under the Note and Deed
to receive a lump payment on principal has been modified by the
plan in accordance with § 1322(c)(2), and allows for the debtor
to pay monthly payments on principal, removing the creditors'
right to a lump payment.

D

It is necessary to decide whether the above discussion will
apply to only plan payments after the Note's maturity date,
September 22, 2016, or to all payments made under the plan.  The
specific question is whether payments under the plan, until the
maturity date, were interest only payments.  Section 1322(c)(2)
does not provide that a modification under that provision is
effective only as to amounts coming due after the maturity date
of the Note.  This means that as soon as a plan is confirmed, the
modification of the claim under § 1322(c)(2) applies to the
entire debt provided for by the plan and to all of the payments

22

that have been or are made under the plan. The opposite would lead to absurd results. If, for example, a plan was not modified until the debt matured on its own terms, and the last payment on the Note was due the day before the last payment of the plan, then § 1322(c)(2) would apply, but only for one day. Such a result would defeat the whole purpose of § 1322(c)(2). It makes more sense that once a plan is confirmed, all that the plan can modify would be modified. This means that the creditors' right to a lump sum ended on January 16, 2016, the date upon which the plan was confirmed.

Additionally, as already noted above, plan payments do not need to adhere to the payment scheme contemplated under the Note. The plan provides that the whole claim of the creditors will be paid through the plan. No payments on the creditors' claim would be made outside the plan. Therefore, all payments made since the plan confirmation, have been plan payments and thus amortize the whole debt, as if it had already matured.

Therefore, the plan treats the Note as matured, and the whole debt is to be paid on an amortized basis beginning on the confirmation date. Thus, all payments made thus far under the plan were amortization payments. Creditors had the right, since the confirmation of the plan, to apply the payments to accrued interest and incurred fees before principal, but the remainder of all payments made under the plan must be applied to the

principal.

IV

Finally, both parties seek clarification of the application of the $26,422.90 credit granted by this court. The order made clear that the credit was to be applied to accrued interest and other components of the allowed claim, but did not specify how it was to be allocated amongst its various components. Principal is a component of the allowed claim, so the credit could be applied to principal.

A question arises as to when the $26,422.90 credit should be applied. If the credit were applied on the petition date of October 14, 2015, no interest or attorneys' fees or expenses were owed as of that date, and the application of the credit would result in a reduction of principal by $26,422.90.[3] However, the plan had not been confirmed at that point, and under nonbankruptcy law at that point the creditors were entitled to hold the $26,422.90 in reserve for future accruals of interest and attorneys' fees and expenses.

The Note, according to its terms, did not mature until September 22, 2016, and before maturity, absent a lump sum payment of principal, payments could only be applied to interest. However, confirmation of the plan altered that. The confirmed

---

[3]  The interest that had accrued on October 1, 2015, had been paid, and the court disallowed any claim for prepetition attorneys' fees and expenses.

24

plan provided for full payment of the creditors' allowed secured
claim plus six percent postconfirmation interest per annum.  As
discussed previously, this resulted in the creditors being
obligated to apply any payment to principal after satisfaction of
any interest or attorneys' fees and expenses that were
outstanding.

The next question, then, is whether the confirmation order
had retroactive effect to the petition date (or to the date of
the filing of the plan or to the date of commencement of plan
payments).  The order had no such retroactive effect with respect
to when the $26,422.90 credit was to be applied.  The court's
confirmation order provided that the creditors were to be paid,
in monthly payments, the amount due them under the plan "based on
the amount owed them as of the date of entry of this order
pursuant to their proof of claim (as though no objection to claim
had been filed)."[4]

In other words, the creditors' claim was to be calculated
based on the amount owed them under nonbankruptcy law as of the
confirmation date.  The amount owed as of the confirmation date
included interest accruing after the petition date and until the
confirmation date.  Interest of $23.01 per day accrued for the 93

---

[4]  There was a limitation, of no relevance to the instant
question, that such payments in the aggregate were not to exceed
$52,000 pending the outcome of the debtor's objection to the
creditors' claim.

days after the petition date and until the confirmation date, resulting in $2,139.93 of interest owed on the confirmation date. (Although interest was payable in arrears on the first of each month, the allowed claim includes the pro rata portion of interest that had accrued as of the confirmation date.)  As of the confirmation date, no postpetition attorneys' fees had yet been invoiced to the creditors.  (*See* Dkt. No. 137.) Accordingly, as of the confirmation date, there were no fees that could be paid out of the $26,422.90 credit.[5]

The result is that $2,139.93 of interest and principal of $80,000.0 were the amount of the allowed secured claim as of the confirmation date.  The creditors are allowed, as they wish, to apply the $26,422.90 credit first to interest, they were obligated to apply the remaining balance of $24,282.97 to principal, resulting in the allowed secured claim as of the

---

[5]  Paragraph 9 of the Deed of Trust authorized the creditors to pay "reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding."   It then provided that:

> **Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.**  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

[Emphasis added.] Accordingly, it is clear that until the creditors paid attorneys' fees, the amounts that the debtor owed and to which payments could be applied did not include any such attorneys' fees.

confirmation date being $55,717.03.

V

For the aforesaid reasons, it is

ORDERED that the creditors, Babak Djourabchi and Monica
Welt, are not permitted to seek prepetition attorneys' fees in
relation to the Note and Deed.  It is further

ORDERED that the creditors, Babak Djourabchi and Monica
Welt, are permitted to submit to the court, for a determination
of reasonableness in accordance with Fed. R. Bankr. P. 2016(a),
postpetition attorneys' fees for all legal proceedings related to
this bankruptcy case.  It is further

ORDERED that should the creditors, Babak Djourabchi and
Monica Welt, prevail in the District Court proceeding related to
the debtor's claims against them for wrongful foreclosure, breach
of contract, violation of D.C. interest and usury laws (D.C. Code
§§ 28-3301, et seq.), and tortious interference with business
relationship, they shall be permitted to submit to the court a
motion for a determination of reasonable attorneys' fees related
to that case in accordance with Fed. R. Bankr. P. 2016(a).  It is
further

ORDERED that the creditors' allowed secured claim owed as of
the confirmation date is $55,717.03.  It is further

ORDERED that the plan modifies any right the creditors may
have to a lump payment of principal under the Note and Deed in

27

accordance with § 1322(c)(2).  It is further

ORDERED that the creditors may apply each plan payment to
interest of six percent per annum that has accrued after the
confirmation date on the $55,717.03 allowed secured claim (as
that $55,717.03 amount has been adjusted for any previous plan
payments applied to reduce the allowed secured claim) and to any
fees that have been incurred and allowed as of the receipt of the
payment before applying the payments to reduce the allowed
secured claim, but the remainder of the payment must be applied
to reduce the amount of the allowed secured claim.

[Signed and dated above.]

Copies to: The debtor; recipients of e-notification of filings.

28